IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PACIFIC COAST SHIPYARDS PENSION FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> NAUTICAL ENGINEERING, INC., et al., <br><br> Defendants. | No. 12-05439 RS <br><br> **ORDER GRANTING MOTION TO DISMISS** |

## I. INTRODUCTION

This ERISA action arises from defendant Nautical Engineering Inc.'s alleged failure to fulfill its obligations to the plaintiff pension funds. The plaintiff funds and their respective trustees contend that Nautical and the Esteves defendants, a faction consisting of the Esteves Family Trust and Ursula Esteves, owe delinquent contributions and withdrawal liability penalties to the funds. The Esteves defendants move to dismiss the fourth and sixth claims of plaintiffs' Second Amended Complaint (SAC). For the foregoing reasons, the motion is granted.

## II. BACKGROUND

Nautical Engineering Inc. was incorporated by Manuel Esteves in 1994. The articles of incorporation authorized one class of stock at 300,000 shares. In 2001, Manuel and his wife, Ursula Mary Esteves, created the Esteves Family Trust ("EFT"). The trust agreement named Manuel and Ursula as sole trustees. The trust was funded with real property, personal property, bank accounts,

brokerage accounts, mutual funds, and investments – including all shares of Nautical. Manuel died in 2010, leaving Ursula since then as the EFT's sole trustee.

In May 2011, while serving as Nautical's CEO and Secretary, Ursula loaned the company $500,000, allegedly funded with EFT assets. Plaintiffs allege the loan proceeds were used to run Nautical's business. A few months later, in July 2011, Ursula and her son Michael Esteves, Nautical's CFO and treasurer, executed a corporate resolution authorizing the sale of real property owned by Nautical in Oakland, California. The property was sold in April 2012. In July 2012, the escrow agent working on the land sale transferred $370,343.61 to an account in the name of "Ursula M. Esteves, Trustees of the Esteves Family Trust" [sic] and designated the transfer as "payoff of loan to Nautical Engineering." That same day, the escrow company sent a check for $3,702.32 to Nautical, allegedly representing the net proceeds of the corporation's property sale. The check became void after it was not deposited within ninety days. In early 2013, Michael allegedly attempted to have the check reissued to the client trust account of an attorney. The escrow company refused, instead reissuing the check to Nautical.

As a participating employer in the plaintiff pension funds, which were established pursuant to collective bargaining agreements with several labor unions, Nautical was obligated to file monthly reports on, and make pension fund contributions commensurate with, the number of hours worked by covered employees. Plaintiffs allege that Nautical fulfilled its obligations until August 2011, when it ceased contributing to the funds. On November 17, 2011, plaintiffs notified Nautical that it was subject to withdrawal liability under ERISA.

Plaintiffs filed suit in October 2012, alleging withdrawal liability under the Employee Retirement Income Security Act of 1974 ("ERISA").[1] Plaintiffs amended their complaint to add the EFT and Ursula Esteves, both in her individual capacity and as trustee of the EFT, averring joint liability for Nautical's alleged withdrawal. In September 2013, the Esteves defendants moved to dismiss all claims against them. The motion was denied in part and granted in part. (ECF No. 55). Plaintiffs lodged a second amended complaint pleading additional facts in support of their fourth and sixth claims, both of which had been dismissed with leave to amend as to the Esteves

---

[1] Plaintiffs' four separate cases were consolidated by court order. (ECF No. 21).

No. CV 12-05439 RS
ORDER

2

1 defendants. The Esteves defendants again move to dismiss the fourth and sixth claims against them,
2 contending that plaintiffs have failed to state a claim upon which relief can be granted.

### III.  LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 566 U.S. 652, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.* The determination is a context-specific task requiring the court "to draw in its judicial experience and common sense." *Id*. at 1950.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.,* 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

### IV. DISCUSSION

A. <u>Fourth Claim: "Common Control" Withdrawal Liability (Esteves Family Trust)</u>

The Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), which amended ERISA, imposes withdrawal liability on an employer that withdraws from a multiemployer pension

plan. *Resilient Floor Covering Pension Fund v. M & M Installation, Inc.*, 630 F.3d 848, 851 (9th Cir. 2010). The MPPAA defines "employer" to include not only the entity making contributions to the pension plan, but also "trades or businesses (whether or not incorporated)" that are under "common control" with the contributing entity. 29 U.S.C. § 1301(b)(1). Trades or businesses under common control are therefore considered a single employer under ERISA and are jointly and severally liable for each other's withdrawal liability. *See Bd. of Trs. of W. Conference of Teamsters Pension Trust Fund v. Lafrenz*, 837 F.2d 892, 893 (9th Cir. 1988).

Plaintiffs' fourth claim alleges that the EFT is jointly liable for Nautical's withdrawal obligations because the trust is a "trade or business" that is "under common control" with Nautical. *See* 29 U.S.C. § 1301(b)(1). A prior order dismissed this claim with leave to amend, reasoning that while the pleadings support an inference that both EFT and Nautical were under Ursula's "common control" at the time withdrawal liability arose, plaintiffs failed to allege facts plausibly supporting their assertion that the trust was a "trade or business" under the MPAA. (ECF No. 55). It was not enough for the FAC to contend that the EFT held all the shares of Nautical and loaned money to Nautical "to help Nautical be successful." (FAC ¶ 65). The order held that the EFT's ownership of Nautical, coupled with a single loan allegedly funded with trust assets, is not enough to implicate the fractionalization and liability-dodging concerns underlying § 1301(b)(1). (ECF No. 55); *see also Teamsters Pension Trust Fund v. Allyn Transp. Co.*, 832 F.2d 502, 507 (9th Cir. 1987) (Congress enacted § 1301(b)(1) in order "to prevent businesses from shirking their ERISA obligations by fractionalizing operations into many separate entities.").

The SAC seeks to remedy this deficiency by pleading additional facts to support plaintiffs' claim that the trust was a "trade or business." Plaintiffs now allege, on information and belief, that Nautical was financially successful and that the EFT "apparently received the profits of the business" until Nautical began to experience financial difficulties. (SAC ¶ 65). Plaintiffs further contend that Ursula, acting in her capacity as trustee, signed the July 2011 corporate resolution authorizing Nautical's property sale "because the corporate officers did not apparently believe they had the authority alone to do so." *Id.* Additionally, plaintiffs argue that the EFT's loan to Nautical, which the SAC characterizes as "potentially imprudent," evinces the trust's active involvement in

No. CV 12-05439 RS
ORDER

4

the operations and management of Nautical.  In sum, the gravamen of plaintiffs' fourth claim is that Nautical and the EFT share such an identity of interest that, since 2001, "the business of Nautical Engineering, Inc. was the business of the Trust."  (SAC ¶ 65).

If assumed true, these new averments still do not raise plaintiffs' right to relief "above the speculative level." *See Twombly*, 550 U.S. at 555.  In essence, plaintiffs contend that the EFT is a "trade or business" because it owned Nautical for ten years, profited from such ownership, signed a resolution authorizing sale of real property owned by Nautical, and made a loan to rescue the company in 2011.  Although the allegations support an inference that Nautical and EFT were under the "common control" of Ursula Esteves, plaintiffs fail to explain how the aforementioned ownership activities suffice to render the EFT a "trade" or "business" under § 1301(b).  While plaintiffs repeatedly emphasize that Nautical and the EFT share an "identity of interest" such that the entities' business was allegedly one in the same, they fail to identify acts that could suffice to render the trust a trade or business.

While few courts have interpreted "trade or business" under § 1301(b), those which have found an entity or individual to be a "trade or business" have invariably identified some profit-oriented activity that is distinct from mere ownership of the withdrawing company.  *See, e.g., Lafrenz*, 837 F.2d at 892 (husband and wife engaged in a "trade or business" by operating a separate entity that owned and leased trucks for a profit to the withdrawing corporation, which they also owned); *Carpenters Pension Trust Fund for N. California v. Lindquist*, 2011 WL 2884850 (N.D. Cal. 2011) *aff'd*, 491 F. App'x 830 (9th Cir. 2012) (individual was a "trade or business" where he leased real property to the withdrawing corporation for seven years); *Vaugn v. Sexton*, 975 F.2d 498, 503 (8th Cir. 1992) (family trust was a "trade or business" because it continuously leased real property to the withdrawing corporation over a two-year period); *Bd. of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Delaware Valley Sign Corp.*, 945 F. Supp. 2d 649, 653 (E.D. Va. 2013) (individual was a "trade or business" because he leased his own property to the withdrawing employer, which he also owned).  Plaintiffs' SAC, by contrast, does not allege that the EFT was engaged in any profit-oriented enterprise beyond its ownership of Nautical.  *See Pension Plan for Pension Trust Fund for Operating Engineers v. Galletti Concrete, Inc.*, 2013 WL 5289017, *4 (N.D.

Cal. 2013) ("The mere ownership of property without more is insufficient to constitute a 'trade or business.'") (citation omitted).

Plaintiffs have twice failed to aver facts sufficient to support a claim for withdrawal liability against the EFT. Accordingly, the fourth claim is dismissed without leave to amend as to the EFT.

B. Sixth Claim: Withdrawal Liability (Ursula Esteves)

Plaintiffs' prior complaint sought personal withdrawal liability from Ursula Esteves by alleging that the EFT was her alter ego. That claim was dismissed with leave to amend because a trust cannot be an "alter ego" under California law. (ECF No. 55); *see Greenspan v. LADT, LLC*, 121 Cal. Rptr. 3d 118, 146 (Ct. App. 2010). The SAC now alleges that Ursula Esteves is the alter ego of Nautical. In support of this theory, plaintiffs contend that Ursula caused funds to be repaid from Nautical's escrow account to her as trustee instead of first satisfying Nautical's withdrawal liability.

"Under California law, there are two general requirements for establishing an alter ego theory: (1) there is such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Baker v. Chin & Hensolt, Inc.*, 2010 WL 147954 (N.D. Cal. 2010) (quotation marks and citation omitted). "Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Orosa v. Therakos, Inc.*, 2011 WL 3667485, *6 (N.D. Cal. 2011) (quoting *Neilson v. Union Bank of California*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003)) (quotation marks omitted).

Between the allegations in the SAC and the arguments in plaintiffs' opposition to this motion, it is unclear how plaintiffs seek to invoke the alter ego doctrine in furtherance of their sixth claim. On one hand, plaintiffs still seem to allege that Ursula Esteves should personally be held liable for withdrawal liability imputed to the family trust.[2] This theory fails for two reasons. First, the prior order already dismissed plaintiffs' claim that the EFT is Ursula's alter ego. Second, as

---

[2] "The [sixth] claim is adequately pled. Given Ms. Esteves' position as CEO and sole trustee, she may be personally liable for the withdrawal liability imputed to the trust." (Pl. Opp. 5:16-17).

discussed above, the EFT cannot be held liable for Nautical's withdrawal liability because it is not a "trade or business." The SAC also avers that Ursula is personally liable for Nautical's withdrawal liability. Plaintiffs fail to plead adequate facts, however, to support this theory. *See Orosa*, 2011 WL 3667485, *6 (plaintiff must allege facts supporting both elements of alter ego liability). To plead the "unity of interest and ownership" prong sufficiently, it is not enough for plaintiffs to allege that Ursula was in complete control of Nautical. *See High v. Choice Mfg. Co.*, 2012 WL 3025922, *4 (N.D. Cal. 2012) ("[t]he only real allegation on alter ego is that Mr. Masi is the sole shareholder and president of Choice but that fact by itself is not enough to give rise to a prima facie case of alter ego"); *Leek v. Cooper*, 125 Cal. Rptr. 3d 56, 68 (2011) ("An allegation that a person owns all of the corporate stock and makes all of the management decisions is insufficient to cause the court to disregard the corporate entity."). Nor, for purposes of the second prong, is it sufficient for plaintiffs conclusorily to allege that "the ends of justice require" that Ursula be held personally liable for Nautical's withdrawal liability. (SAC ¶ 72); *see Orosa,* 2011 WL 3667485, *7 (mere allegation of undercapitalization is insufficient to imply an unjust result at the pleading stage); *Neilson*, 290 F. Supp. 2d at 1117 (pleading failed to allege injustice prong of alter ego theory where it stated that plaintiffs would suffer an inequitable result but "fail[ed] to allege facts supporting this statement"). Absent facts plausibly supporting both prongs of alter ego liability under California law, plaintiffs' sixth claim cannot proceed. *Cf. Laguna v. Coverall N. Am., Inc.*, 2009 WL 5125606, *1 (S.D. Cal. 2009) (concluding that alter ego liability was facially plausible because "[t]he SAC alleges that Allied is the sole shareholder in Coverall and Coverall Cleaning Concepts, LLC; regularly removed cash and other assets from Coverall to minimize the ability of creditors to attach funds; did not respect normal corporate formalities (failed to keep corporate minutes and/or backdated such minutes); failed to contribute capital, issue stock, or otherwise complete the formation of these entities; and failed to provide adequate capital and operating funds").

Plaintiffs' SAC fails to state a claim for withdrawal liability against Ursula Esteves. Because there is no indication that plaintiffs could amend their complaint to plead a plausible basis for alter ego liability, and considering that plaintiffs have had ample opportunity to aver facts sufficient so support such a theory, the sixth claim is dismissed without leave to amend.

V. CONCLUSION

For the foregoing reasons, the Esteves defendants' motion to dismiss is GRANTED. Plaintiffs' fourth claim against the Esteves Family Trust and sixth claim against Ursula Esteves are dismissed with prejudice.

IT IS SO ORDERED.

Dated: 1/13/14

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE